**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

**Dated: December 7 2015**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| In Re: ) | Case No.: 10-37438 |
| ) | |
| Jared R. Bennett and ) | Chapter 7 |
| Wendy Bennett, ) | |
| ) | Adv. Pro. No. 14-3144 |
| Debtors. ) | |
| ) | Hon. Mary Ann Whipple |
| Jared R. Bennett, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| Morton Buildings, Inc., ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OF DECISION REGARDING
### DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

This adversary proceeding is before the court on Defendant's Motion for Partial Summary Judgment ("Motion") [Doc. # 14] and Plaintiff's response [Doc. # 18]. Plaintiff is a debtor in the underlying Chapter 7 case. In his complaint, Plaintiff alleges that Defendant violated the court's Order of Discharge and, thus, the discharge injunction under 11 U.S.C. § 524, by pursuing claims of fraud, conversion, conspiracy, theft, and tortious interference with business relationships against him in state court. Although Defendant has filed counterclaims alleging the nondischargeability of debts allegedly owed to it by Plaintiff, its Motion addresses only Plaintiff's claim that Defendant violated the discharge injunction. Having considered the

Motion and the memoranda in support of the parties' respective positions, for the reasons that follow, Defendant's Motion will be granted in part and denied in part.

## FACTUAL BACKGROUND

Unless otherwise indicated, the following facts are undisputed. Plaintiff and his wife filed a petition for relief under Chapter 13 of the Bankruptcy Code on November 3, 2010.[1] [Case No. 10-37438]. Defendant was not included as a creditor or party-in-interest on Plaintiff's bankruptcy schedules and, thus, did not receive formal notice of Plaintiff's bankruptcy case. [*See* Pl. Aff. ¶ 2]. On August 7, 2012, the court entered an order converting the case to a case under Chapter 7. [Case No. 10-37438, Doc. # 139]. The Chapter 7 Trustee filed a no asset report, and an Order of Discharge was entered on December 26, 2012. [*Id*., Doc. ## 150 & 158]. The Clerk administratively closed the case on December 31, 2012.

On July 2, 2013, Defendant filed an action in the Common Pleas Court of Allen County, Ohio, alleging claims against Jeffrey and Janice Dawson. [Doc. # 14, Ex. A, Blair Aff. ¶ 10]. On November 13, 2013, Defendant filed a Second Amended Complaint ("State Court Complaint"), adding Plaintiff as a defendant and alleging, among other things, that Plaintiff, in conspiracy with Jeffrey Dawson ("Dawson"), committed fraudulent acts and intentionally interfered with Defendant's business relationships. [*Id.* at ¶ 12; Doc. # 4, Counterclaim ¶4; Doc. # 5, Answer to Counterclaim, ¶ 4].

The operative facts of Defendant's claims against Plaintiff as alleged in the State Court Complaint occurred between May 17, 2011, and April 16, 2013. [Doc. # 4-1, Exhibit 1, ¶¶ 39, 111]. Defendant alleged that Dawson was employed by it as a sales consultant with duties that included managing commercial construction projects and that he fraudulently entered into contracts with customers for work and material that he did not intend to supply. [*Id.* at ¶¶ 10-11, 45]. Defendant further alleged that Plaintiff dba Elite Builders participated in Dawson's fraud and in interfering with Defendant's business relationships. [*Id.* at ¶¶ 39, 111]. Plaintiff was an approved subcontractor for Defendant. [Doc. # 14, Exh. A, Blair Aff. ¶ 9]. According to Defendant, in furtherance of his fraudulent scheme, Dawson entered into agreements with Plaintiff whereby Dawson would provide "kickbacks" in return for Plaintiff's participation in the fraudulent contracts. [*Id.* at ¶¶ 7-8].

On July 7, 2014, Plaintiff filed his answer to the State Court Complaint asserting his bankruptcy discharge as a defense. [Doc. # 14, Exh. A, Blair Aff. ¶ 14]. Defendant first learned of Plaintiff's

---

[1] The court takes judicial notice of the contents of its case docket. Fed. R. Bankr. P. 9017; Fed. R. Evid. 201(b)(2); *In re Calder*, 907 F.2d 953, 955 n.2 (10th Cir. 1990); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1171-72 (6th Cir. 1979) (stating that judicial notice is particularly applicable to the court's own records of litigation closely related to the case before it).

bankruptcy filing and bankruptcy discharge on that date. [*Id.* at ¶ 15]. Thereafter, Defendant continued to proceed with its civil suit against Plaintiff, including taking Plaintiff's deposition on August 11, 2014. [Doc. # 18, Pl. Aff. ¶¶ 4-5 attached thereto]. During Plaintiff's deposition, he was questioned about contracts that included those that were entered into before conversion of his bankruptcy case to Chapter 7 on August 7, 2012. [*Id.* at ¶ 4].

## LAW AND ANALYSIS

### I. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, however, all inferences "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88 (1986). The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, "and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party has met its initial burden, the adverse party "may not rest upon the mere allegations or denials of his pleading but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue for trial exists if the evidence is such that a reasonable factfinder could find in favor of the nonmoving party. *Id*.

### II. Violation of Discharge Injunction

In his complaint, Plaintiff alleges that Defendant is in contempt of court for violating the Order of Discharge and seeks sanctions that include compensatory damages, costs, attorney's fees and punitive damages. The court recognizes that pursuant to Federal Rule of Bankruptcy Procedure 9020 and 9014, the traditional way to bring an action for contempt is by motion. However, because an adversary proceeding provides a defendant with more, not less procedural protection than in a Rule 9014 contested matter brought by motion, "courts routinely hear contempt actions brought as adversary proceedings." *Motichko v. Premium Asset Recovery Corp. (In re Motichko)*, 395 B.R. 25, 32 (Bankr. N.D. Ohio 2008). *See also, Brannan v. Wells Fargo Home Mortgage, Inc. (In re Brannan )*, 485 B.R. 443, 455 (Bankr. S.D. Ala. 2013); *Palazzola v. City of Toledo (In re Palazzola )*, 2011 WL 3667624, *11, 2011 Bankr. LEXIS 3225, *31-32

3

(Bankr. N.D. Ohio Aug. 22, 2011); *Beck v. Gold Key Lease, Inc. (In re Beck )*, 272 B.R. 112, 130 n.25 (Bankr. E.D. Pa. 2002).

In a civil contempt proceeding, three elements must be established by clear and convincing evidence: "(1) the alleged contemnor had knowledge of the order which he is said to have violated; (2) the alleged contemnor did in fact violate the order; and (3) the order violated must have been specific and definite." *Hunter v. Magack (In re Magack)*, 247 B.R. 406, 410 (Bankr. N.D. Ohio 1999) (citing *Glover v. Johnson*, 138 F.3d 229, 244 (6th Cir. 1998)). In the context of the discharge injunction, this means that a debtor must prove that the creditor "(i) violated the discharge injunction (and thus the order granting the discharge) and (ii) did so with knowledge that the injunction was in place." *Gunter v. Kevin O'Brien & Assocs. Co. LPA (In re Gunter)*, 389 B.R. 67, 72 (Bankr. S.D. Ohio 2008).

In this case, Plaintiff does not dispute that Defendant filed the State Court Complaint without knowledge of his bankruptcy discharge and that Defendant did not therefore willfully violate the Order of Discharge by such filing. But there is also no dispute that Defendant had knowledge of the Order of Discharge by July 7, 2014, when Plaintiff filed his answer to the State Court Complaint and raised his discharge as a defense. Plaintiff's discharge operates as an injunction against the commencement or continuation of an action to collect any debt that was discharged. 11 U.S.C. § 524(a)(2). It is Plaintiff's position that, after learning of Plaintiff's bankruptcy discharge on July 7, 2014, Defendant's failure to dismiss claims against him that were subject to his Chapter 7 discharge and continuing to prosecute the State Court Complaint without obtaining a determination as to the dischargeability of those claims is a willful violation of the Order of Discharge.

In support of its Motion, Defendant first argues that Plaintiff cannot prove contempt since Defendant had no knowledge of Plaintiff's bankruptcy case and discharge until after the bankruptcy case was closed and Plaintiff filed his answer in the state court action. However, the discharge injunction was in effect after the bankruptcy case was closed. Thus, to the extent Plaintiff can show that Defendant continued after learning of the bankruptcy discharge to pursue discharged claims, Plaintiff could prevail on his contempt claim.

Defendant also argues that the debt owed to it by Plaintiff did not arise before the date of the order for relief in Plaintiff's bankruptcy case and, therefore, is not subject to the discharge injunction at all. Except as provided in § 523, a Chapter 7 discharge "discharges the debtor from all debts that arose before the date of the order for relief under this chapter." 11 U.S.C. § 727(b). The meaning of "the date of the order for relief" in a case converted from Chapter 13 to Chapter 7, as is the situation here, is addressed in

4

§ 348. That section provides that, in such a case, the phrase "the order for relief under this chapter" found in § 727(b) means the date of conversion of the case to Chapter 7. 11 U.S.C. § 348(b). In addition, § 348 provides that " [a] claim against the estate or the debtor that arises after the order for relief but before conversion" in a case that is converted from Chapter 13 "shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition." 11 U.S.C. § 348(d).

Applying these provisions, any debts of Plaintiff's that arose before August 7, 2012, the date of conversion of Plaintiff's bankruptcy case, were discharged unless otherwise provided in § 523. Although Defendant alleges in its counterclaim that the alleged debt was excepted from discharge under § 523(a)(3)(B), its Motion addresses only the timing of when its claims arose in arguing that the debt is not subject to the discharge injunction. Defendant argues that its claims for fraud, conversion, conspiracy, theft, and tortious interference with business relationships did not arise until after August 7, 2012, because (1) they were not enforceable under state law until it conducted discovery in the state action and discovered Plaintiff's alleged fraud, and (2) it will have no debtor-creditor relationship with Plaintiff until such time as a judgment is entered against Plaintiff.

The Bankruptcy Code defines "debt," as "liability on a claim." 11 U.S.C. § 101(12). A "claim" is defined in relevant part as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). "Congress intended the term 'claim' to have the '"broadest possible definition ... [including] all legal obligations of the debtor, no matter how remote or contingent."' *In re Parks*, 281 B.R. 899, 901 (Bankr. E.D. Mich. 2002) (quoting H.R.Rep. No. 95–595, at 649 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 5963).

In determining for bankruptcy purposes when a claim arises, courts have developed several distinct tests: the accrual test, the conduct test, and the prepetition relationship/fair contemplation test. *See In re Cleveland*, 349 B.R. 522, 529-30 (Bankr. E.D. Tenn. 2006) (discussing the three tests). In developing these tests, courts have grappled with often times competing interests, including protecting a debtor's fresh start by giving "claim" a broad definition, due process requirements, a creditor's right to compensation, and the Bankruptcy Code's hostility to a debtor's fraudulent conduct. *In re Huffy Corp.,* 424 B.R. 295, 302 (Bankr. S.D. Ohio 2010)*; Corman v. Morgan (In re Morgan)*, 197 B.R. 892, 898-99 (N.D. Cal. 1996), *aff'd* 131 F.3d 147 (Table) (9th Cir. 1997). The Sixth Circuit Court of Appeals has not addressed the issue, but courts in the Sixth Circuit have applied either the conduct test or the prepetition relationship/fair contemplation test. *See In re Cleveland*, 349 B.R. at 531(prepetition relationship/fair contemplation test); *In re Parks*, 281 B.R.

5

at 903 (prepetition relationship/fair contemplation test); *Roach v. Edge (In re Edge)*, 60 B.R. 690, 705 (Bankr. M.D. Tenn. 1986) (conduct test).

Under the accrual test, a claim does not arise until the claim accrues under non-bankruptcy law. Defendant's argument that its claims did not arise until it discovered Plaintiff's fraud, since fraud claims do not accrue under state law until the fraud is discovered, falls under this test. Most notably adopted by the Third Circuit in *Avellino & Bienes v. M. Frenville Co., Inc. (In re M. Frenville Co., Inc.)*, 744 F.2d 332 (3d Cir. 1984), this approach has been widely rejected as inconsistent with the broad definition of "claim" in § 101(5), which is designed to ensure that "all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case." *Roberds, Inc. v. Lumbermen's Mut. Cas. Co. (In re Roberds, Inc.)*, 285 B.R. 651, 657 (Bankr. S.D. Ohio 2002); H.R. Rep. No. 595, 95th Cong., 2d Sess. 1, 309 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6266; S.Rep. No. 598, 95th Cong., 2d Sess. 1, 22, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5808. More recently, the Third Circuit rejected this test as well. *Jeld-Wen, Inc. v. Brunt (In re Grossman's Inc.)*, 607 F.3d 114, 120-21 (3d Cir. 2010) (finding the widespread criticism justified and overruling *M. Frenville Co., Inc.*). Courts agree that while state law may determine the existence of a cause of action, "federal law determines when a claim arises for bankruptcy purposes." *See, e.g., Hassanally v. Republic Bank (In re Hassanally)*, 208 B.R. 46, 50 (B.A.P. 9th Cir. 1997) (citing *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991) (holding that the question of whether an interest is a claim for bankruptcy purposes is "to be resolved by reference to the text, history, and purpose of the Bankruptcy Code")); *Watson v. Parker (In re Parker)*, 264 B.R. 685, 697 (B.A.P. 10th Cir. 2001); *Roberds, Inc.*, 285 B.R. at 656-57. To that end, courts have generally applied either the conduct test or the prepetition relationship/fair contemplation test.

Under the conduct test, a claim arises when debtor's conduct forming the basis of liability occurs, even if the resulting injury is not manifest until much later. *Grady v. A.H. Robins Co., Inc.*, 839 F.2d 198, 203 (4th Cir. 1988) ("We do not believe there must be a right to immediate payment in the case of a tort or allied breach of warranty or like claim . . . when the acts constituting the tort or breach of warranty have occurred prior to the filing of the petition to constitute a claim under § 362(a)(1)."); *Jeld-Wen, Inc.*, 607 F.3d at 125 (holding that "a 'claim' arises when an individual is exposed pre-petition to a product or other conduct giving rise to an injury, which underlies a 'right to payment' under the Bankruptcy Code"); *Parker* 264 B.R. at 697 (finding that "pursuant to the plain language of the statute, a claim will exist if some pre-petition conduct has occurred that will give rise to liability"); *Hassanally*, 208 B.R. at 54 (stating that determination of when creditor's negligent construction claim arose under federal law "need not be

6

analyzed any further than when the alleged negligent conduct occurred, for a contingent claim arose at that time"); *Edge*, 60 B.R. at 699 (concluding that the "Bankruptcy Code recognizes a 'right of payment' for the victim of a debtor's prepetition misconduct at the earliest point in the relationship between victim and wrongdoer," even if the "right to payment may not be manifested as a right of access to other courts" and even if it is "unmatured and contingent"). Where no countervailing policy exists, courts employing this test reason that it is consistent with the broad definition of the word "claim" and furthers the Bankruptcy Code's fresh start policy. *See, e.g., Grady*, 839 F.2d at 202-03; *Parker*, 264 B.R. at 697; *Hassanally*, 208 B.R. at 50-51, 54; *Edge*, 60 B.R. at 699-700.

Recognizing that the conduct test defines when a claim arises for bankruptcy purposes too broadly in certain situations, courts have modified the test in two ways to address specific policy considerations. Under the prepetition relationship test, a prepetition claim exists if the debtor's conduct giving rise to the claim occurred prepetition and some form of prepetition relationship existed between the debtor and the claimant. *See, e.g., In re Piper Aircraft Corp.*, 162 B.R. 619, 627-28 (Bankr. S.D. Fla. 1994), *aff'd Epstein v. Official Comm. of Unsecured Creditors (In re Piper)*, 58 F.3d 1573 (11th Cir. 1995); *Lemelle v. Universal Mfg. Corp. (In re Lemelle)*, 18 F.3d 1268, 1277 (5th Cir. 1994) (finding the absence of evidence of any pre-petition contact, privity or other relationship between the debtor and claimant precluded finding that claim was discharged).

In *In re Piper Aircraft Corp.*, the debtor was a manufacturer of aircraft and associated spare parts. It was contemplated that, following confirmation of its Chapter 11 plan, some of its planes would crash and people would be killed or injured. *In re Piper Aircraft Corp.*, 162 B.R. at 621. The court-appointed representative of this group filed a proof of claim on behalf of these future claimants based upon the debtor's pre-confirmation design and manufacture of aircraft. *Id.* The court found that, under the conduct test, "everyone in the world would hold a claim against Piper simply by virtue of their potential future exposure to any plane in the existing fleet." *Id.* at 625. The court recognized "significant and possibly insurmountable due process problems" and held that "in order for a future claimant to have a 'claim' under § 101(5), there must be some prepetition relationship, such as contact, exposure, impact or privity, between the debtor's prepetition conduct and the claimant." *Id.* at 627-28.

The prepetition relationship test is also not without criticism. Courts have noted that it can define "relationship" so broadly as to "undermine the rationale for considering whether or not a relationship exists, namely, that a creditor with a relationship may anticipate its potential claim." *Cal. Dept. of Health Servs. v. Jensen (In re Jensen)*, 995 F.2d 925, 930 (9th Cir. 1993); *Signature Combs, Inc. v. United States*, 253 F.

7

Supp. 2d 1028, 1037 (W.D. Tenn. 2003) (recognizing that it has been defined so broadly as to make it the equivalent of the conduct test). In order to address this shortcoming, court have further modified the conduct test to include a "fair contemplation" requirement. This approach was developed in cases requiring the court to reconcile the conflicting goals of environmental cleanup law, which seek to protect public health and the environment by imposing costs on the parties responsible for pollution, and the Bankruptcy Code, which is designed to give a debtor a fresh start by discharging as many of its debts as possible. *See Jensen*, 995 F.2d at 927-28.

Under the prepetition relationship/fair contemplation test, a "claim arises prepetition only if it is 'based upon pre-petition conduct that can fairly be contemplated by the parties at the time of the debtors' bankruptcy.'" *Signature Combs, Inc.*, 253 F. Supp. 2d at 1037 (quoting *Jensen*, 995 F.2d at 930.) Applying this test in *Signature Combs, Inc.*, the court held, for discharge purposes, that a claim arises "when the potential CERCLA claimant, at the time of bankruptcy, 'could have ascertained through the exercise of reasonable diligence' that it had a claim against the debtor for a hazardous release." *Id.* at 1037 (internal citation omitted). The court explained that "[o]nly the fair contemplation approach embraces and attempts to balance the sometimes competing goals of CERCLA and the Bankruptcy Code." *Id.* at 1039.

Courts have also found the prepetition relationship/fair contemplation test appropriate for determining when a fraud claim pursued by a creditor arises. *See Morgan*, 197 B.R. at 898; *In re Parks*, 281 B.R. at 903. *But see In re New Century TRS Holding, Inc.*, 465 B.R. 38, 45 (Bankr. D. Del. 2012) (applying the Third Circuit's conduct test). In *Morgan*, the court explained:

> As is the case with CERCLA claims, a creditor pursuing a fraud claim against a bankrupt presents a court with conflicting objectives.
>
> On the one hand is the objective of giving the debtor a fresh start. Providing debtors this fresh start is the overriding goal of the Code. The objective of giving debtors a fresh start therefore supports adopting a very broad definition "claim"[sic] in this case, perhaps even to the extent of adopting the "debtor's conduct" approach . . . .
>
> On the other hand is the objective of not allowing debtors to use the Code as a shield for fraudulent conduct. One way in which this objective manifests itself is the judicial doctrine which limits discharge to innocent debtors. See, for example, *Grogan v. Garner*, 498 U.S. 279, 286–87, 111 S.Ct. 654, 659–60, 112 L.Ed.2d 755 (while the fresh start is "a centralized purpose of the Code," this opportunity is limited to the "honest but unfortunate debtor") . . . . Another way this objective manifests itself is Code §§ 523(a)(2) and (4), which except debts for fraud from discharge.
>
> Adoption of the "fairly contemplated" test is the best way to balance the Code's fresh start policy, on the one hand, and its measured hostility to fraud, on the other. On the one hand,

8

> adoption of this test will serve the goal of giving debtors a fresh start by forcing all creditors *who know or should know* before confirmation of their fraud claims against the debtor to bring those claims in the bankruptcy case, thus allowing those claims to be resolved under the Code's special provisions for fraud and discharge. On the other hand, adoption of this test will prevent bankruptcy from being used as a shield for fraud by allowing fraud claims to go forward against debtors who concealed their fraud prior to discharge.

*Morgan*, 197 B.R. at 898 (N.D. Cal. 1996)(emphasis added). The court found that the creditor's constructive notice of a financing statement filed in the public record was sufficient to put it on notice of his fraud claim that the debtor had failed to disclose the corresponding security interest during their prepetition negotiation of a settlement agreement. *Id.* at 899. Because it was on constructive notice of the financing statement, the court found that the creditor "should have 'fairly contemplated' the existence of his current fraud claim" against the debtor. *Id.* at 899-900.

*In re Parks* is a case similar to the case before the court in that the debtor, Parks, contended that a fraud claim filed against him violated the discharge injunction. Parks was a principal of Vision, the contractor for a renovation project on a home. In order to receive disbursements, Vision was required to furnish lien waivers to Devon Title, the provider of title insurance in connection with a construction loan for the home renovation. Parks, on behalf of Vision, certified to Devon Title that no money was owed to subcontractors for work done on the home. But several contractors had not been paid and liens were placed on the home. After Parks had filed for Chapter 7 relief, the homeowners brought suit against Devon Title. Devon Title then filed a third-party complaint against Parks based upon his misrepresentations.

Stating that it was adopting the "fair contemplation" approach for the reasons stated in *Morgan*, the court found that Devon Title's claim was a prepetition claim. *In re Parks,* 281 B.R. at 903. The court found that Devon Title had a prepetition relationship with Parks since it was required to collect certifications from representatives of Vision. It then found that Devon Title was in a position to ascertain whether the representations made by Parks were accurate as it "could have confirmed the representations by contacting the subcontractors." *Id.* Thus, relying on prepetition facts that Devon Title *knew or should have known* and from which it could fairly contemplate a claim for misrepresentation by Parks, the court held that Devon Title's claim was discharged and that its third-party complaint violated the discharge injunction.

The court also finds the *Morgan* analysis persuasive, at least in the context of determining when a fraud claim arises for bankruptcy purposes. Therefore, where the requisite relationship exists and the creditor knew or should have known of facts from which it should have fairly contemplated the existence of its fraud claims before the petition was filed, or in this case before conversion of the case, the claim arises

9

prepetition, or pre-conversion as the case may be.[2]  *Cf. In re Cleveland*, 349 B.R. at 531-32 (adopting the test in a Chapter 13 case in determining that secured creditor's claim for postpetition escrow payments paid on behalf of debtor arose prepetition where creditor had knowledge prepetition that debtor was not making his required escrow payments).

In this case, Defendant acknowledges that Plaintiff was one of its approved subcontractors with whom Defendant dealt through its agent, Dawson.  Defendant argues, however, that it did not have the requisite prepetition relationship with Plaintiff because no debtor-creditor relationship in the context of the bad acts alleged in its State Court Complaint will exist until such time as judgment is entered against Plaintiff in state court.  But the prepetition relationship test does not require that a claim be reduced to judgment.  The Bankruptcy Code specifically defines claim to include a "right to payment, whether or not such right is reduced to judgment." 11 U.S.C. § 101(5)(A).  The court finds that the parties had the requisite prepetition relationship pursuant to their contractor/sub-contractor relationship.  Defendant's allegations relate to alleged bad acts of Plaintiff while portraying himself as Defendant's sub-contractor.

On the record before it, the evidence is insufficient to determine when Defendant should have fairly contemplated its claims against Plaintiff.  Defendant offers Blair's affidavit stating that Defendant first learned of the alleged conspiratorial relationship between Plaintiff and Dawson in 2013, after conversion of Plaintiff's bankruptcy case.  While this evidence may satisfy a finding as to when Defendant had actual knowledge of Plaintiff's alleged bad acts, questions of fact exist as to when Defendant *should have known* of facts from which it should have fairly contemplated its claims against Plaintiff.  For example, Defendant alleges in its counterclaim in this proceeding that Dawson, without authority from Defendant, entered into subcontract agreements to perform work for Defendant on various construction projects and was billing customers and receiving payment for work that was never performed by any subcontractor. [Doc. # 4, Counterclaim, ¶11-12]. It further alleges that Plaintiff participated in the creation of subcontract agreements with Defendant's customers by which Elite Builders was to perform work that it never intended to and did not perform, [*Id.* at ¶ 17], facts that Plaintiff disputes in his Affidavit.  Defendant argues that it paid Bennett under his subcontracts in reliance on Dawson's and Plaintiff's misrepresentations. [Doc. # 14, p. 4].  It alleges that the operative facts of its claims against Plaintiff occurred as early as May 17, 2011, approximately sixteen months before conversion of Plaintiff's bankruptcy case.  To the extent, for example,

---

[2] The court's holding addresses the appropriate test as applied to fraud claims only.  The court takes no position here as to the proper test where there exists no countervailing policy to the Bankruptcy Code's policy of discharging as many debts as possible to promote a debtor's fresh start.  *See In re Huffy Corp.,* 424 B.R. at 303 (recognizing that given the wide variety of fact situations that may be presented, one approach simply may not fit all circumstances).

that Defendant's customers may have complained that they paid for work that was never completed before the August 7, 2012, conversion date, Defendant should have fairly contemplated its claims against Plaintiff. Although it seems reasonable that such complaints would have been lodged, the record is silent as to any customer response that Defendant may or may not have received.

Nevertheless, Plaintiff also acknowledges that to the extent claims alleged by Defendant in its State Court Complaint are based upon conduct that allegedly occurred after conversion of his bankruptcy case, the claims are postpetition and are not subject to the discharge injunction. Defendant is therefore entitled to judgment as a matter of law as to those claims. To the extent that Defendant's claims are based upon Plaintiff's conduct that allegedly occurred before conversion of his case, as discussed above, it is not entitled to summary judgment based upon its argument that the claims are all postpetition claims as there remain genuine issues of material fact for trial.

**III. Punitive Damages/Attorney's Fees**

Recognizing that a contemnor's conduct is likely to have caused the debtor to incur damages, courts generally permit, as a sanction for such conduct, an award of damages to the debtor, including attorney's fees and, where there has been shown a willful violation that amounts to a clear disregard and disrespect of the bankruptcy laws, punitive damages. *In re Chambers*, 324 B.R. 326, 329 (Bankr. N.D. Ohio 2005); *Perviz*, 302 B.R. at 371-73; *see also Adell v. John Richards Homes Bldg. Co. (In re John Richards Homes Bldg. Co.),* 552 Fed. Appx. 401, 414-15 (6th Cir. 2013) (stating that "while § 105(a) grants bankruptcy courts authority to award mild noncompensatory punitive damages, it does not provide a basis for awarding <u>serious</u> noncompensatory punitive damages."); *McMahan & Co. v. Po Folks, Inc.*, 206 F.3d 627, 634 (6th Cir. 2000)(stating that "the primary purpose of a civil contempt order is to compel obedience to a court order and compensate for injuries caused by non-compliance").

According to Defendant, even if the court determines that a discharge violation occurred, an award of punitive damages and attorney's fees is inappropriate in this case since it had no knowledge of Plaintiff's discharge until well after the discharge had been entered. Defendant further argues that its conduct does not amount to a blatant disregard of the discharge order.

The fact that Defendant was not informed of Plaintiff's discharge until after it filed its State Court Complaint may excuse any violation of the discharge injunction before that time but does not address any violation that may have occurred after learning of the discharge. And Defendant sets forth no facts indicating what steps it took or didn't take after it was informed of Plaintiff's discharge. In the event a violation of the discharge injunction occurred, [*see* Doc. # 18, Pl. Aff. ¶¶ 3-5 attached thererto], genuine

11

issues for trial exist regarding Plaintiff's entitlement to punitive damages and attorney's fees precluding summary judgment.

**THEREFORE,** for all of the foregoing reasons, good cause appearing,

**IT IS ORDERED** that Defendant's Motion for Partial Summary Judgment [Doc. # 14] be, and hereby is, **GRANTED** to the extent its claims alleged in the State Court Complaint are based upon Plaintiff's conduct that occurred after conversion of his bankruptcy case on August 7, 2012, and is otherwise **DENIED**.

###

12

14-03144-maw    Doc 38    FILED 12/07/15    ENTERED 12/07/15 14:55:35    Page 12 of 12