**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

**Dated: December 7 2015**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 10-37438 |
| | ) | |
| Jared Ross Bennett and | ) | Chapter 7 |
| Wendy Lynn Bennett, | ) | |
| | ) | Adv. Pro. No. 14-3144 |
| Debtors. | ) | |
| | ) | Hon. Mary Ann Whipple |
| Jared R. Bennett, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Morton Buildings, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OF DECISION AND ORDER DENYING DEFENDANT'S MOTION TO ABSTAIN

This adversary proceeding came before the court for hearing on Defendant's Motion to Abstain [Doc. # 23] and Plaintiff's objection [Doc. # 26]. Counsel for Defendant appeared at the hearing in person. Plaintiff's counsel appeared by telephone. For the following reasons and those stated on the record at the hearing, Defendant's motion will be denied.

### BACKGROUND

Plaintiff and his wife filed a petition for relief under Chapter 13 of the Bankruptcy Code on

November 3, 2010.[1] [Case No. 10-37438]. Defendant was not included as a creditor or party-in-interest on Plaintiff's bankruptcy schedules and, thus, did not receive formal notice of Plaintiff's bankruptcy case. After conversion of Plaintiff's bankruptcy case to a case under Chapter 7, an Order of Discharge was entered on December 26, 2012. [*Id.*, Doc. #158]. The Clerk administratively closed the case on December 31, 2012.

On July 2, 2013, Defendant filed an action in the Common Pleas Court of Allen County, Ohio, alleging claims against Jeffrey and Janice Dawson. [Doc. # 14, Ex. A, Blair Aff. ¶ 10]. On November 13, 2013, Defendant filed a Second Amended Complaint ("State Court Complaint"), adding Plaintiff and Ellis Door & Window, Inc. as defendants. The allegations in Defendant's State Court Complaint are primarily focused on the conduct of Jeffrey Dawson ("Dawson"), alleging, among other things, that he: (1) entered into contracts with customers in which he falsely represented that Defendant would complete certain work in order to personally receive payment for the work; (2) entered into various subcontracts to perform work for Defendant on construction projects, billed customers and received payment for the work that was not authorized by Defendant, and received kickbacks from payments received by the subcontractors from customers; and (3) violated the terms of his employment agreement and non-compete agreement with Defendant. [Doc. # 4, Ex. 1, ¶¶ 9-38]. The State Court Complaint alleges that: (1) Plaintiff paid Dawson money "in participation and in furtherance of Dawson's fraud" and in interference with Defendant's Employment Agreement, [*Id.* at ¶¶ 39 & 111]; and (2) Dawson entered into unauthorized subcontracts with Plaintiff and others for work for Defendant and paid kickbacks to Dawson, [*Id.* at ¶¶ 56 & 58]. Counts one through five allege claims of fraud, conversion, conspiracy, theft and unjust enrichment against all defendants in the state court action. [*Id.* at ¶¶ 44-77]. Counts six through nine allege claims against Dawson for violating the non-compete agreement, misappropriating trade secrets, breach of duty of loyalty and tortious interference with prospective business relationships. [*Id.* at ¶¶ 78-107]. And count ten alleges a claim of tortious interference with business relationships against Plaintiff, Ellis Door and Windows, Inc., and others. [*Id.* at ¶¶ 108-117].

On November 18, 2014, Plaintiff commenced this adversary proceeding seeking a judgment finding Defendant in contempt for violating the discharge injunction and, thus, the Order of Discharge. Defendant filed counterclaims, seeking a determination that the alleged debts owed to it by Plaintiff are

---

[1] The court takes judicial notice of the contents of its case docket. Fed. R. Bankr. P. 9017; Fed. R. Evid. 201(b)(2); *In re Calder*, 907 F.2d 953, 955 n.2 (10th Cir. 1990); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1171-72 (6th Cir. 1979) (stating that judicial notice is particularly applicable to the court's own records of litigation closely related to the case before it).

2

nondischargeable under 11 U.S.C. § 523(a)(3), (a)(2) and (a)(6).

## LAW AND ANALYSIS

Defendant asks the court to exercise its discretion to abstain from adjudicating its counterclaims against Debtor while it pursues its state law claims in state court. A bankruptcy court may abstain from hearing a proceeding arising under title 11 or arising in or related to a case under title 11 "in the interest of justice, or in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(1). In determining whether the court should exercise its discretion to abstain from hearing this proceeding, the court notes that "'abstention from the exercise of federal jurisdiction is the exception, not the rule." *Johnston v. City of Middletown (In re Johnston)*, 484 B.R. 698, 714 (Bankr. S.D. Ohio 2012).

Factors that are relevant to the abstention issue include:

(1) the effect or lack thereof on the efficient administration of the estate if a court recommends abstention; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable law; (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather the form of an asserted core proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgment to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of the bankruptcy court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence in the proceeding of non-debtor parties; and (13) any unusual or other significant factors.

*Id.* The court weighs these factors, and no one factor is necessarily determinative. *Id.* at 715.

For ease of discussion, the court combines some of these factors in its analysis. First, the court notes that abstention will have no effect on the administration of Debtor's bankruptcy estate as no estate exists. His bankruptcy case was a no asset case that was closed on December 31, 2012.

Second, state law issues do not predominate over the bankruptcy issues in this case. Defendant's counterclaims are claims that debts owed to it by Plaintiff are nondischargeable under § 523(a)(3)(B), (a)(2) and (a)(6). While the factual bases of its claims in this case may be the same as those underlying its claims in state court, bankruptcy law, not state law, applies in determining whether Plaintiff owes Defendant a nondischargeable debt for money obtained by "false pretenses, a false representation, or actual fraud," 11 U.S.C. § 523(a)(2)(A), or for "willful and malicious injury," 11 U.S.C. § 523(a)(6), as alleged by Defendant. The court need only determine that such a debt is owed by Plaintiff. Defendant's argument that substantive state law must first be addressed before dischargeability is addressed is not well taken.

Third, this court's jurisdiction is not only proper pursuant to § 1334, but both Plaintiff's contempt

3

claim and Defendant's nondischargeability claims are also core proceedings pursuant to 28 U.S.C. §157(b)(2)(I) and (O). This proceeding is closely related to the underlying bankruptcy case in that the claims require a determination of the effect of the Order of Discharge entered in that case.

Fourth, determining Plaintiff's contempt claim is inextricably intertwined with Defendant's nondischargeability claims, and this court has exclusive jurisdiction to determine Plaintiff's contempt claim. *See E3 Biofuels, LLC v. Biothane Corp.*, No. 1:12-mc-76, 2014 WL 794787, *3 (S.D. Ohio Feb. 27, 2014). Although Defendant argues that Plaintiff's claims in this proceeding are separate and distinct from Defendant's state law claims such that abstention would not impact Plaintiff's claim, the court disagrees. Plaintiff's claim alleges Defendant's contempt of the discharge injunction and, thus, the Order of Discharge, based upon Defendant's pursuit of claims in state court that have allegedly been discharged. While the legal bases of Defendant's state law claims may be different, continuing to prosecute prepetition claims in state court is inconsistent with the discharge injunction to the extent such claims have in fact been discharged.

Defendant argues that proceeding in this court will cause it to lose its right to a jury trial on its claims against Plaintiff. However, that is always the case in a dischargeability proceeding. While the existence of a right to a jury trial with respect to a claim before this court may weigh in favor of abstention, there is no such right as to any claim in this proceeding.

Defendant also argues that the fact that there are non-debtor parties in the state court action weighs in favor of abstention since Defendant would otherwise have to pursue its claims against them separately. The court does not find that this fact favors abstention in this case. Indeed, this factor weighs heavily against abstention in the court's view. Claims involving Dawson's employment and any benefit to his wife are distinct from Defendant's claims against Plaintiff. Other than Defendant, there are no non-debtor parties in this proceeding. And although, as argued by Defendant, discovery was nearly complete in the state court action, the parties have stipulated that all such discovery be treated as though conducted in this proceeding.

The only fact that lends itself to abstaining is that some of the acts underlying Defendant's claims against Plaintiff allegedly occurred after the date of conversion of his bankruptcy case to Chapter 7.[2] However, the court finds this fact is far outweighed by all of the other factors discussed above.

**THEREFORE**, for all of the foregoing reasons and those stated at the hearing on Defendant's motion, good cause appearing,

---

[2] As Plaintiff concedes, any claims based upon post-conversion acts are not subject to the discharge injunction in Plaintiff's bankruptcy case. *See* 11 U.S.C. §§ 727(b), 348(b) & (d).

**IT IS ORDERED** that Defendant's Motion to Abstain [Doc. # 23] be, and hereby is, **DENIED.**

###